UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH J. MOORE, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-01100-SRC |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant(s). | ) | |

**Memorandum and Order**

Deborah Moore requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying her application for disability-insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The Court affirms the Commissioner's decision.

**I.     Procedural history**

In September 2018, Moore filed a Title II application for disability-insurance benefits for a period of disability. Tr. 10, 131–32. The Social Security Administration initially denied her application, but Moore requested a hearing before an ALJ and testified at the hearing. Tr. 10, 65–69, 72–73. After the hearing, the ALJ denied Moore's application, and the Appeals Council denied Moore's request for review. Tr. 10–19, 1–6. As such, the ALJ's opinion stands as the final decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.     Decision of the ALJ

The ALJ determined that Moore was not engaged in substantial gainful activity since her alleged on-set date of June 11, 2018.  Tr. 12.  The ALJ found that Moore had the severe impairments of degenerative disc disease of the cervical, lumbar, and thoracic spine, and aortic atherosclerosis.  Tr. 12.  The ALJ found that Moore did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 14–15.

The ALJ determined that Moore retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and could lift up to 10 pounds occasionally, stand/walk for about 2 hours, and sit for up to 6 hours in an 8-hour workday with normal breaks.  Tr. 15.  Moore can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds.  *Id*.  She could occasionally balance, stoop, kneel, crouch, and crawl, occasionally overhead reach using the right upper extremity, and frequently handle objects using her right upper extremity.  *Id*.  She needed to avoid exposure to excessive vibration, exposure to operational control of moving machinery, unprotected heights, and exposure to hazardous machinery.  *Id*.

The ALJ found Moore capable of performing "past relevant work" as an insurance clerk or office manager, and that this work does not require the performance of work-related activities precluded by Moore's residual functional capacity.  Tr. 18.  Consequently, the ALJ found that Moore was not disabled.  Tr. 19.  Moore appeals.  Docs. 1, 14.

## III.    Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

2

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 404.1520(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i)

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. § 404.1520(c).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains

3

the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At

4

step five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id*.  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id*.  The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).  The Eighth Circuit explained that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd*, 621 F.3d at 738) (internal quotations omitted).

**IV.      Discussion**

As noted above, the ALJ determined that Moore retains the RFC to perform sedentary work with certain limitations, and that she can perform past relevant work as an insurance clerk or office manager.  Tr. 15–19.  Moore argues that the Court should remand because the ALJ failed to properly evaluate the credibility of Moore's testimony at the hearing and because the ALJ failed to develop the record fully and fairly.  Doc. 14 at pp. 3, 13.

5

> A. **Substantial evidence supports the ALJ's determination of the consistency of Moore's testimony with the record as a whole**

Moore argues that the ALJ failed to expressly determine Moore's credibility and that substantial evidence does not support the ALJ's credibility finding. Doc. 14 at pp. 3–13. Before the Social Security Administration issued Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017), ALJs assessed a claimant's *credibility* by considering: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (setting out the *Polaski* factors); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The *credibility* of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (emphasis added). "If an ALJ explicitly *discredits* the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's *credibility* determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) (emphasis added).

Social Security Ruling 16-3p eliminated "use of the term 'credibility'" and instructed ALJs "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms" consistent with applicable regulations. The Eighth Circuit analyzed the impact of Social Security Ruling 16-3p in *Lawrence v. Saul*:

> In *Polaski* and cases that followed, we examined subjective complaints with reference to a claimant's credibility. Social Security Ruling 16-3p eliminates use of the term "credibility" and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole. . . . [I]t largely changes terminology rather than the substantive analysis to be applied.

6

970 F.3d 989, 995 n.6 (8th Cir. 2020).

The Court first rejects Moore's assertion that the ALJ failed to expressly determine her credibility. While Moore uses the word "credibility" as a shorthand for the ALJ's evaluation of the level of consistency between Moore's subjective assertions and the balance of the record as a whole, Doc. 14 at p. 4, the Court uses the regulatory language. The regulations and Social Security Ruling 16-3p require consideration of the reported symptoms and the extent to which they "can reasonably be accepted as consistent with the objective medical evidence and the other evidence." 20 C.F.R. § 404.1529(a). Here, the ALJ set out the *Polaski* factors listed above, discussed the medical evidence in the record, and determined that "[a]fter careful consideration of the evidence, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," and then proceeded to explain the inconsistencies. Tr. 15–16; *see Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010) (holding before the above-noted change in terminology that "[w]hen rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors.").

Thus, the ALJ's well-reasoned finding that "the claimant's statements . . . are not entirely consistent with the medical evidence and other evidence in the record" satisfies the requirement that the ALJ expressly determine the extent to which Moore's testimony "can reasonably be accepted as consistent with the objective medical evidence and the other evidence. *See Lawrence*, 970 F.3d at 995 n.6 ("Social Security Ruling 16-3p eliminates use of the term 'credibility'. . . but it largely changes terminology rather than the substantive analysis to be applied."). Further, as discussed below, substantial evidence supports the ALJ's decision.

### B. The ALJ fully and fairly developed the record

Moore argues that the ALJ failed to develop the record fully and fairly because he did not obtain an updated opinion from Dr. Donna McCall, the agency medical consultant. She claims that the "absence of a current medical opinion regarding [Moore]'s ability to function in the workplace requires remand." Doc. 14 at p. 15. Moore contends, without authority, that the law required the ALJ to obtain a medical opinion addressing Moore's workplace abilities "either by the medical consultant's projected RFC on June 10, 2019[,] or by the date of the hearing decision on November 13, 2019. *Id*. Moore further argues that the ALJ erred by substituting his own inferences from the medical records instead "of obtaining an opinion from a medical professional." *Id*.

"While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue,* 648 F.3d 605, 612 (8th Cir. 2011) (citing *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir. 1994)). Additionally, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Haley v. Massanari,* 258 F.3d 742, 749 (8th Cir. 2001) (quoting *Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995)).

Here, the ALJ held a forty-minute hearing and the record contained treatment records as well as the opinions of psychological consultant James Morgan, Ph.D., medical consultant Donna McCall, M.D., consultative physical examiner Anthony Newell, M.D. When the record contains this variety of evidence, the Eighth Circuit has repeatedly found that the ALJ adequately developed the record. *See, e.g.*, *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (ALJ did not fail to adequately develop the record regarding claimant's work-related limitations because record contained medical consultants' assessments as to claimant's work-related limitations);

8

*Haley*, 258 F.3d at 749–50 (8th Cir. 2001) (ALJ did not fail to develop the record when record contained reports from treating and consulting physicians, results from medical tests, disability questionnaires, and transcripts from hearings in which claimant was questioned by his attorney and ALJ). Moreover, as explained in detail below, the ALJ relied on the significant medical evidence in the record regarding Moore's physical impairments in reaching his RFC determination. Accordingly, the Court concludes that substantial evidence supports the ALJ's RFC determination.

Moore's treatment records disclose a history of cervical spinal fusion surgery and that Moore reported back pain and joint pain to her doctor. Tr. 16. Diagnostic imaging showed diffuse thoracic spondyloarthritis with bulging and herniation, and while MRI showed evidence of degenerative disease, the imagining was essentially normal and there was no surgical disease. *Id.* On physical examination, Moore had less than full grip strength in her right hand, and full strength in her arms and legs. *Id.* At one doctor's visit Moore exhibited a compensated gait, and a month later exhibited a normal gait. *Id.* X-rays showed "maintain disc heights," except at C6/C7, but the arthritis was not bone-on-bone. *Id.* Imagining also revealed less than 15 degrees of lumbar scoliosis. *Id.*

At Moore's consultative physical exam, Dr. Newell noted that Moore did not present in acute distress, and that, while Moore exhibited tenderness over her spine, no evidence of muscle spasm or bony deformity existed. *Id.* at pp. 16–17. At the exam, Moore exhibited normal stride and gait, was able to sit and stand without assistance, demonstrated normal grip strength and engaged in gross and fine manipulation within normal limits, performed a partial squat, and did not walk with an assistive device. *Id.* at p. 17. The ALJ then noted Dr. McCall's opinion

regarding Moore's RFC, and found it "of limited persuasiveness because evidence subsequent to the opinion supports additional restrictions." *Id.*

The ALJ also noted that Moore alleged that she experiences worsening pain in her neck, back, hips, and legs, and that sitting, standing, or extending her arms induces severe pain. *Id.* at p. 16.  Moore told the ALJ that the pain causes her misery until she can recline. *Id.*  Considering all the evidence, the ALJ found that, while Moore's impairments could cause her pain, Moore's statements concerning the intensity, persistence and limiting effects of her pain were not entirely consistent with the evidence in the record. *Id.*

Moore argues that the ALJ's finding that Dr. McCall's opinion was "of limited persuasiveness" means that "there is no medical opinion. . .to support the ALJ's RFC assessment.  Doc. 14 at p. 14.  Moore argues that the "absence of a current medical opinion regarding [Moore]'s ability to function in the workplace requires remand because it is legal error that changed the outcome of the case," Doc. 14 at p. 15, and claims that "the ALJ was obligated to obtain an updated medical opinion to determine [Moore]'s ability to function in the workplace and to support the RFC assessment. . ." *Id.* at p. 14.

Moore simply misstates the law.  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007)).  The law does not require, however, that an RFC finding be supported by a specific medical opinion. *Id*. at 932 (RFC affirmed without medical opinion evidence); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (same); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012) (same); *see also Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (stating that an ALJ's RFC determination need not "be

10

supported by a specific medical opinion"; rather it need only "be supported by some medical evidence of the claimant's ability to function in the workplace" (quoting *Hensley*, 829 F.3d at 932)). Moreover, despite Moore's claim that "there is no medical opinion. . .to support the ALJ's RFC assessment," Doc. 14 at p. 14, the ALJ *did* consider Dr. McCall's opinion—he just found it of limited persuasiveness due to later evidentiary development. Because the ALJ cited to a significant amount of medical evidence, as just described, to support his RFC determination, the Court concludes that substantial evidence supports the ALJ's RFC determination.

Moore's claim that the "ALJ succumbed to the temptation to play doctor," Doc. 14 at p. 15, ignores the fact that federal regulations require the ALJ to evaluate "the extent to which [a claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [a claimant's] symptoms affect [the claimant's] ability to work." 20 C.F.R. §§ 404.1529, 416.929. In other words, the law commits these determinations to ALJs, and here, the ALJ did precisely what the law requires.

In this case, no "crucial" issues remained undeveloped, *see Snead*, 360 F.3d at 839, "several examining physicians provided detailed clinical data and observations about [Moore]'s limitations," *Stormo*, 377 F.3d at 806, and substantial evidence supports the ALJ's RFC determination. Because "there is no requirement that an RFC finding be supported by a specific medical opinion," *Hensley*, 829 F.3d at 932, the ALJ did not err when he did not order an updated opinion from Dr. McCall.

## V.    Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own

11

judgment for that of the ALJ.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007).  Finding that the ALJ correctly applied the legal standards and that substantial evidence supports the ALJ's conclusions, the Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Moore's Complaint with prejudice.  Doc. 1.  A separate judgment accompanies this Memorandum and Order.  The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 28th day of February 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE